[Cite as *In re Adoption of M.R.W.*, 2023-Ohio-4705.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# CRAWFORD COUNTY

IN RE: THE ADOPTION OF:

M.R.W.

[ERIC W. - APPELLANT]

CASE NO. 3-23-25

O P I N I O N

Appeal from Crawford County Common Pleas Court
Probate Division
Trial Court No. 00001082

Judgment Affirmed

Date of Decision: December 26, 2023

APPEARANCES:

*G. Scott McBride* for Appellant

*Kyle Phillips* for Appellee

**ZIMMERMAN, J.**

{¶1} Petitioner-appellant, Eric W. ("Eric"), appeals the decision of the Crawford County Court of Common Pleas, Probate Division, ("Crawford County Probate Court") concluding that the consent of respondent-appellee, Aaron A. ("Aaron"), to Eric's petition to adopt M.R.W. is necessary. For the reasons that follow, we affirm.

{¶2} M.R.W. was born in March 2012 to Katrina K. ("Katrina") and Aaron. Aaron is listed as the father on M.R.W.'s birth certificate.[1] Katrina and Aaron resided together initially after M.R.W.'s birth, thereafter separating on or around May 2012, and finally ending their relationship in 2014.

{¶3} On August 8, 2022, Aaron filed a motion for establishment of companionship and visitation time in Crawford County Juvenile Court in case number I 212-3089. At a pretrial conference held on October 11, 2022, the parties agreed to delay contact between Aaron and M.R.W. until after Eric's and Katrina's marriage scheduled on October 29, 2022. At the hearing, the juvenile court inquired as to whether an adoption petition was imminent, and Eric's attorney assured the juvenile court that the parties did not intend to file an adoption petition if contact between Aaron and M.R.W. were delayed to until after the wedding. Nevertheless,

---

[1] Paternity was established and a child support order was issued, in case number I 212-3089, on September 24, 2012 in the Common Pleas Court of Crawford County, Juvenile Division, ("Crawford County Juvenile Court"). No companionship or parenting time orders were issued in that case at that time since it derived from an administrative order for child and medical support later ratified by Crawford County Juvenile Court.

Eric and Katrina retained an attorney to file the petition for adoption on or about October 20, 2022, and Katrina executed written consent for Eric to adopt M.R.W. on October 27, 2022.

{¶4} Katrina and Eric were married on October 29, 2022. However, on October 31, 2022, the next business day following their nuptials, Eric filed a petition for adoption of M.R.W. in the Common Pleas Court of Marion County, Probate Division, ("Marion County Family Court") notwithstanding the representations Eric's attorney made to the Crawford County Juvenile Court. Along with his petition, he attached Katrina's consent for Eric to adopt M.R.W. The one-year "look back" period as to Aaron's contact with M.R.W. in this adoption is October 31, 2021 to November 1, 2022.

{¶5} On February 15, 2023, the Marion County Family Court transferred venue to Crawford County Probate Court along with a complete copy of its record. The Crawford County Probate Court accepted the transfer by an order journalized on March 21, 2023 and thus, the Marion County Family Court filings became a part of the Crawford County Probate Court's record.

{¶6} In his petition, Eric asserts that Aaron's consent to the adoption is not necessary because "[Aaron] failed without justifiable cause to provide more than de minimus contact with [M.R.W.] for a period of at least one year immediately preceding the filing of the adoption petition []."

{¶7} The Crawford County Probate Court scheduled the matter for a consent-not required hearing on April 24, 2023. After conducting the hearing, the trial court filed its judgment entry on April 28, 2023 concluding, "[Eric] failed to prove by clear and convincing evidence that [Aaron] failed without justifiable cause to have more than de minimus contact with [M.R.W.] and therefore his consent for this adoption is required."

{¶8} Eric filed his notice of appeal raising one assignment of error for our review.

## Assignment of Error

**The Trial Court committed prejudicial error, abused its discretion, and it was against the manifest weight of the evidence when Trial Court ruled the natural father's consent was necessary for the adoption of M.R.W. and dismissed Appellant [Eric's] petition for adoption.**

{¶9} In his assignment of error, Eric argues that the trial court erred by concluding that Aaron's consent to Eric's petitions for adoption is required. In particular, Eric argues that the trial court erred by concluding that Aaron had justifiable cause for failing to provide more than de minimis contact with M.R.W. for one year immediately preceding the filing of the adoption petition, and that such determination is against the manifest weight of the evidence.

### Standard of Review

{¶10} "'Ordinarily, the written consent of a minor child's natural parents is required prior to adoption, but R.C. 3107.07 provides exceptions to this

-4-

requirement.'" *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23, quoting *In re Adoption of K.C.*, 3d Dist. Logan No. 8-14-03, 2014-Ohio-3985, ¶ 20. Specifically, R.C. 3107.07 states:

> Consent to adoption is not required of any of the following:
>
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

R.C. 3107.07(A). "'R.C. 3107.07(A) is written in the disjunctive.'" *In re Adoption of H.R.* at ¶ 23, quoting *In re Adoption of K.C.* at ¶ 21. "'Therefore, a failure without justifiable cause to provide *either* more than de minimis contact with the minor *or* maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent.'" (Emphasis sic.) *Id.*, quoting *In re Adoption of K.C.* at ¶ 21, citing *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶11} "Because cases such as this one may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor during the requisite one-year period and that there was no

justifiable cause for the failure." *Id.* at ¶ 24, citing *In re Adoption of K.C.* at ¶ 24, citing *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 9. """Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner.""" *Id.*, quoting *In re R.L.H.* at ¶ 9, quoting *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 10.

> 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'

*Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus, and citing *In re Adoption of K.C.* at ¶ 24.

*Analysis*

{¶12} As a preliminary matter, we express concern regarding the attachment by Eric's attorney of an *unredacted* copy of the guardian ad litem's ("GAL") report to his appellate brief. Significantly, counsel represented Eric in both probate courts and on appeal. He also represented Katrina in the juvenile-court proceedings. Our concern arises because the Crawford County Juvenile Court appointed a guardian ad litem ("GAL") to represent the best interest of M.R.W., and the GAL's written

report was *not* made a part of either the Crawford County Probate Court or Marion County Family Court record. Thus, it is *not* a part of the record on appeal.[2]

{¶13} Importantly, the record on appeal is comprised of the following:

(1) The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases.

(2) The trial court shall ensure that all proceedings of record are recorded by a reliable method, which may include a stenographic/shorthand reporter, audio-recording device, and/or video-recording device. The selection of the method in each case is in the sound discretion of the trial court[ ] * * *.

App.R. 9(A)(1)-(2). Significantly, the appendix of a brief is not considered part of the record on appeal. *See State v. Burgett*, 3d Dist. Marion No. 9-10-37, 2010-Ohio-5945, ¶ 30; App.R. 9(A). Moreover "[i]t is well established, [ ] that ""[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.""" *State ex rel. Municipal Construction Equipment Operators' Labor Council v. Cleveland*, 162 Ohio St.3d 195, 2020-Ohio-3197, ¶ 19, quoting *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 108 Ohio St.3d 207, 2006-Ohio-662, ¶ 20, quoting *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728,

---

[2] Even though the Crawford County Probate Court "took judicial notice of all pleadings including said report in the aforementioned juvenile case without objection from any party[]", it did not enter the written GAL report into the instant record. Consequently, this court is unable to consider the written GAL report (on appeal) since it is not included in the Crawford County Probate Court record. *In re Change of Name K.S.G. to K.S.G-B.*, 3d Dist. Hancock No. 5-20-03, 2020-Ohio-4515, ¶ 9-13. Notably, the GAL did testify at the consent-not-required hearing regarding her recommendation to the juvenile court; however, her written report was never stipulated to by the parties nor was it admitted as an exhibit in the hearing.

730 (1995), quoting *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. Thus, since the GAL report was not included in the original papers and exhibits filed in the Crawford County Probate Court, we will *not* consider Appendix Exhibit 2 submitted by the appellant appended to his merit brief.[3]

{¶14} Regardless of our conclusion above, we are compelled to further note that in addition to the attachment of the *unredacted* copy of the GAL report in the appellant's brief, it appears to us that the written GAL report's warning may have been altered and/or manipulated prior to its attachment to the merit brief. *See* Sup. R. 48.06(2) ("All reports shall include the following warning: 'The guardian ad litem report shall be provided to the court, unrepresented parties, and legal counsel. Any other disclosure of the report must be approved in advance by the court. Unauthorized disclosure [or distribution] of *the report may be subject to court action, including the penalties for contempt, which include fine and/or incarceration*.'") (Emphasis added.)

{¶15} Here, appellant's counsel appended to his brief an *unredacted copy* of the written GAL's report *not* included in the original trial court record. That report contains redaction of the warning required by Sup. R. 48.06. Thus, to us there is a concern that the GAL report may have been altered. Moreover, appellant appears

---

[3] Notably, Eric's attorney quoted portions of the written GAL report on page 12 of his merit brief.

to have *publicized* the GAL report in contravention of the Rules of Superintendence for the Courts of Ohio.

**{¶16}** We now turn to consider the trial court's determination that Aaron's consent was required under R.C. 3107.07(A). "'The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A).'" *Id.* at ¶ 25, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23. "The first step involves deciding a factual question—in this case, whether the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor for a period of at least one year immediately preceding the filing of the adoption petition." *Id.*, citing *In re Adoption of K.C.* at ¶ 23, citing *In re R.L.H.* at ¶ 12, citing *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of S.J.M.H.*, 1st Dist. Hamilton No. C-130683, 2014-Ohio-3565, ¶ 29. "'"A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *."'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 23, quoting *In re Adoption of M.B.* at ¶ 25. *See also In re Adoption of S.J.M.H.* at ¶ 29.

**{¶17}** "In the second step of the analysis, if a probate court finds the parent failed to provide more than de minimis contact or failed to provide for the maintenance and support of the minor, the court then determines 'whether justifiable

cause for the failure has been proved by clear and convincing evidence.'" *Id.*, quoting *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of K.C.* at ¶ 23. "'A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence.'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.* at ¶ 24 and *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus.

> In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial.

*In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265, ¶ 11, citing *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 18.

{¶18} We begin by addressing the first step of the analysis applying the appropriate standard of review—that is, whether the trial court abused its discretion by finding that Eric proved that Aaron failed to provide more than de minimis contact with M.R.W. for the one-year period in question. Our review of the record reveals that Aaron did not have any contact with M.R.W. for the one-year "look back" period. As such, we cannot say that the trial court abused its discretion by *implicitly* concluding that Eric proved that Aaron did not have more than de minimis

contact with M.R.W. for one year immediately preceding the filing of the adoption petition.[4]

**{¶19}** Next, we turn to the second step of the analysis that being the trial court's conclusion that justifiable cause existed for Aaron's failure to have de minimus contact with M.R.W. Justifiable cause can be established with evidence that there was significant interference or significant discouragement of communication by the child's custodian. *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph three of the syllabus. Where substantial efforts of the child's custodian have deprived a parent of the opportunity to enjoy a meaningful relationship with the child, the law should not further reward the custodian's discordant efforts in a nonconsensual-adoption proceeding. *See In re A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 23. The probate court is not restricted to focusing solely on the one-year statutory period in making this determination. *Id.* Also relevant to this appeal, the Supreme Court of Ohio has said that when a parent

> has filed a parenting motion in a juvenile [] court having continuing jurisdiction over a child prior to the filing of a petition to adopt that child, the probate court *must* consider the parent's legal action as part of its consideration whether the parent failed without justifiable cause to have more than de minimis contact with the child during the year immediately preceding the filing of the adoption petition.

---

[4] Moreover, at all times relevant, Aaron (the obligor) was current in his child support obligation payable to Katrina (the obligee) on behalf of M.R.W., and hence, Aaron did not fail to provide for the maintenance and support of M.R.W.

(Emphasis added.) *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, ¶ 47.

{¶20} As to our review of the trial court's finding that justifiable cause exits for Aaron's failure to provide more than de minimus contact, we need to decide whether such finding is against the manifest weight of the evidence adduced at trial. Thus, we start with a review of the testimony of the witnesses at the consent-not-required hearing.

{¶21} Eric called several witnesses to testify at the hearing relative to Aaron's contact with M.R.W. The first witness Eric called was Aaron, M.R.W.'s father, *as if* on cross-examination. Aaron testified that his last physical contact with M.R.W. was in March 2014 on or around her second birthday. He testified his next physical contact he had with M.R.W. was court-ordered in November 2022. However, according to Aaron, he attempted to have contact with M.R.W. (through Katrina) multiple times in 2014, 2017, 2020, and 2022.

{¶22} Next, Eric called Katrina, M.R.W.'s mother and his wife, as a witness. Katrina testified that Aaron's last interaction with M.R.W. was when she was two-years old. Katrina testified that she was "done" with Aaron in 2014, and blocked his number on her cellphone, but did not block him on Facebook since Aaron had deactivated his account. According to Katrina, she received a letter from Aaron in 2015 or 2016 that she accepted, but she did not view this letter as an attempt to contact M.R.W., but rather to discuss how he had changed. Then, he tried to contact

her again in 2020 through certified mail, which she refused. Katrina further testified that in 2022, she was contacted by a counselor, Kelly Eckrich, and by M.R.W.'s paternal grandparents who sent M.R.W. five or six gifts with cards purportedly signed Aaron and the grandparents.

{¶23} Next, Eric called Sara Dean, M.R.W.'s guardian ad litem ("the GAL"), appointed in the Crawford County Juvenile Court case. The GAL testified that she did not believe that contact between Aaron and M.R.W. was in M.R.W.'s best interest. Additionally, she testified that Katrina was against the process of reconciliation and feels that any contact is "forced contact".

{¶24} Lastly, Eric testified that he met M.R.W. in 2019 and is now married to her mother, Katrina. He testified that he knew at the time he filed the petition for adoption of M.R.W. that Aaron was against it, and he had already requested visitation in Crawford County. Further, he testified that his decision to file the petition for adoption of M.R.W. came *after* the October 11, 2022 pretrial conference in Crawford County Juvenile Court.

{¶25} Following the conclusion of Eric's case, the trial court took judicial notice *on its own motion* of Eric's petition for adoption, the uniform-custody affidavit, and Katrina's consent to adopt, which had previously been made a part of the record in the instant case when the trial court accepted venue. Moreover, these exhibits were admitted at the hearing without objection from any party. Notably, the written GAL report was *never* offered as an exhibit or admitted into evidence.

{¶26} Thereafter, Aaron testified on his own behalf. Aaron stated that, in the first few years after he and Katrina separated, he regularly attempted to call and text Katrina. Aaron stopped because he realized that his number was blocked by Katrina. He testified that he tried to contact Katrina in 2015 or 2016 (via letter) in an effort to establish some type of contact with M.R.W. He testified that he again tried to call or text Katrina in 2017. He also reached out to Katrina in a letter (sent by certified mail) in 2020, which was refused. According to Aaron, he sought the assistance of a counselor (i.e., Kelly Eckrich) to help him to formulate a plan to re-establish contact with M.R.W. because of their estrangement. The counselor assisted him in developing a plan to reach out to Katrina since she had previously been non-responsive to his requests. Aaron testified that his logic in having the counselor reach out via correspondence, text message, and through Instagram (in 2022) was that Katrina might be more inclined to read and respond to the request because it did not come from him.

{¶27} Relative to the trial court's consideration of the parties prior legal action, it is apparent to us that the trial court reflected upon the appellant's commencement of the adoption in Marion County while the visitation case in Crawford County was pending, because the trial court's judgment entry noted certain representations made in the appellant's uniform-custody affidavit (filed in Marion County). The trial judge characterized the same as *false,* or at the very least,

*misleading*.[5] The trial court also considered their attorney's representations (made on behalf of his client–Katrina) to the Crawford County Juvenile Court Magistrate regarding the delaying of visitation between Aaron and M.R.W. in anticipation of Eric's and Katrina's wedding and whether a petition for adoption would be forthcoming from Eric describing them as a *misrepresentation*.[6]

**{¶28}** Moreover, the trial court considered the peculiar timing of Eric's retention of counsel (for the filing of the petition for adoption in Marion County) and the execution of Katrina's consent to the adoption given their attorney's representations made to the magistrate in the visitation case. Specifically, the trial court noted that the date and the timing of the filings (in Marion County) came on the first business day following their wedding and shortly after the clerk of court opened for business. The trial court found that the conduct noted above was not happenstance, but rather,

> an intentional attempt to manipulate and diminish [Aaron's] previous attempts to have [a] relationship with [M.R.W.] and that this has been in the works by Katrina for over [five] years. It is a shame that [M.R.W.] could have had a relationship with [Aaron] from age [five,] which she now has missed due to the actions of [Katrina].

(Doc. No. 4).

---

[5] Indeed, Aaron suffered no prejudice regardless of the whether the statements were false or misleading since the Marion County Family Court Judge recognized the venue issue and sought to transfer the case to the Crawford County Probate Court, wherein the probate judge promptly accepted the transfer. Moreover, relative to the attorney's duty with respect the uniform-custody affidavit, he stated he did not fill out the form, but rather notarized it, and thus, it follows that he did not verify the information contained therein.

[6] Indeed, the Crawford County Juvenile Court Magistrate concluded that they were *material misrepresentations* in its November 8, 2022 Magistrate's Order. (Ex. Q).

**{¶29}** It is clear in our review of the record that the trial court determined the issue of justifiable cause based upon the credibility of the witnesses. "'A trial court is "free to believe all, part, or none of the testimony of any witness who appears before it."'" *In re Adoption of K.C.*, 2014-Ohio-3985, at ¶ 26, quoting *In re Adoption of M.C.*, 4th Dist. Jackson No. 11CA5, 2011-Ohio-6527, ¶ 19, quoting *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (4th Dist.1998). *See also In re J.P.E.*, 2017-Ohio-1108, at ¶ 39. That is– Eric challenges the trial court's determination that Katrina's conduct did not rise to level of interference since he never requested a visit with M.R.W., let alone a significant interference, so as to constitute justifiable cause. *See In re Adoption of Holcomb*, 18 Ohio St.3d at paragraph three of the syllabus ("Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for * * * failure to communicate").

**{¶30}** Importantly, the Supreme Court of Ohio has refused to adopt a "precise and inflexible meaning" for "justifiable cause," but instead has stated, "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *Id.* at 367, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301 (1980). In this regard, the Supreme Court stressed, "[t]he probate court is in the best position to observe the demeanor of the parties, to

assess their credibility, and to determine the accuracy of their testimony." (Emphasis added.) *Id.*

**{¶31}** It is obvious to us that the trial court viewed Katrina's actions as significant interference with Aaron's attempts to have contact with M.R.W. for approximately a five-year period. (*See* Doc. No. 4). Based upon our review of the record, we conclude that the record supports the trial court's determination that justifiable cause exits for Aaron's failure to provide more than de minimus contact with M.R.W., and its determination is not against the manifest weight of the evidence. Specifically, we will not say that the trial court lost its way and created such a manifest miscarriage of justice that the trial court's judgment should be reversed and a new hearing ordered.

**{¶32}** For the foregoing reasons, we hold that the trial court did not err in concluding that Aaron's consent to Eric's adoption of M.R.W. is required under R.C. 3107.07(A).

**{¶33}** Thus, Eric's sole assignment of error is overruled.

**{¶34}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and WALDICK, J.J., concur.**

**/hls**